UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DAVID HOSANNAH,

                          Plaintiff,              **REPORT AND**
                                                  **RECOMMENDATION**
      -against-

NASSAU COUNTY, CAPTAIN MICHAEL              16-CV-1045 (GRB)(SIL)
R. GOLIO, CAPTAIN HESS, AND JOHN
DOE,

                          Defendants.
------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this 42 U.S.C. § 1983 prisoner civil rights case, on referral for Report and Recommendation from the Honorable Gary R. Brown, is Defendants' Nassau County ("the County"), Captain Michael Golio ("Golio"), and Captain Hess ("Hess," together with Golio the "Individual Defendants" and collectively, "Defendants"), motion for summary judgment ("Defendants' Motion" or "Def. Mot."), pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), Docket Entry ("DE") [87]. By way of Complaint dated February 26, 2016, DE [1], later modified by Amended Complaint dated July 29, 2016, DE [9], and again by Second Amended Complaint dated February 26, 2018, DE [38],[1] Plaintiff *pro se* David Hosannah ("Hosannah" or "Plaintiff") commenced this action against Defendants and John Doe pursuant to 42 U.S.C. § 1983 alleging violations of the First

---

[1] Although DE [38] is Plaintiff's Second Amended Complaint, it is referred to as the "Amended Complaint" on the Docket. The Court will cite to it as the Second Amended Complaint ("SAC") for purposes of this Report and Recommendation.

Amendment free exercise clause and the Fourteenth Amendment due process clause, as well as that Defendants were deliberately indifferent to his unlawful treatment. SAC at 1.  For the reasons set forth herein, it is respectfully recommended that Defendants' motion be: (1) granted as to Plaintiff's substantive due process claim against the Individual Defendants based on qualified immunity, and (2) denied on all other grounds.

## I.    BACKGROUND

### A.  <u>Facts</u>

The following facts are taken from the parties' pleadings, declarations, exhibits, Defendants' Local Rule 56.1 Statement ("Def. 56.1"), DE [79-1], Plaintiff's Reply to Defendants' 56.1 Statement ("Pl. 56.1"), DE [81],[2] and Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp."), DE [88].  Those facts taken from Defendants' papers are used to fill in events not addressed by Hosannah, and are considered in the light most favorable to Plaintiff for purposes of this Report and Recommendation.  As indicated below, many of the facts are in dispute.

The allegations in the Second Amended Complaint arise from when Plaintiff was a pretrial detainee at Nassau County Correctional Center ("NCCC").  Hosannah was admitted to NCCC on September 14, 2013, Def. 56.1 ¶ 1, where he remained in custody through October 11, 2016, until his conviction after a bench trial in state court.  *Id.* at ¶¶ 7-8.

---

[2] DE [80] and [81] are identical in all material respects and are Plaintiff's Opposition to Defendants' Rule 56.1 Statement.  For purposes of this Report and Recommendation, the Court will cite to DE [81], which appears on the Docket as Plaintiff's Reply to Defendants' Rule 56.1 Statement ("Pl. 56.1").

Nassau County is a municipal corporation organized and existing under New York State law. *See* Def. 56.1 ¶ 2. Golio and Hess are both captains and employees of the Nassau County Sheriff's Department. *Id.* ¶ 3. Defendant John Doe, according to the Second Amended Complaint, is an unidentified Sergeant at Nassau County Court who was present on the day that Plaintiff appeared in that court on April 4, 2014 before Judge Jerald S. Carter. *See* SAC at 2-3; *id.* at Ex. A at 1.

On April 4, 2014, Plaintiff arrived at Nassau County Court for a hearing before Judge Carter regarding his pending criminal case. Def. 56.1 ¶ 9. According to Defendants, at the hearing, but outside of the presence of Hosannah, Judge Carter expressed a security concern regarding Plaintiff and his co-defendants. *Id.* Although Plaintiff disputes what was said and how the statements were interpreted, *see* Pl. 56.1 at 2, Nassau County court personnel purportedly overheard a conversation between Hosannah and a co-defendant and believed it was part of an effort on behalf of Plaintiff and his co-defendants to escape custody. Def. 56.1 ¶¶ 9, 11. Judge Carter was informed by court personnel and stated,

> Something was brought to my attention in chambers, in relation to security. I know it's been broached with the attorneys. I wanted to do this outside of the presence of the defendants, at this point. I understand my security staff is concerned that these four defendants may not have a regard for security in this courtroom. As a consequence, I have been asked by my sergeant if I would consent to the handcuffs being removed, but keeping the defendants shackled.

*Id.* at ¶ 9.

Plaintiff counters that he never spoke about court security. *See* Pl. 56.1 at 2. Rather, he alleges that in the elevator of the Nassau County Court where he was

being transported for the hearing, he and his co-defendant were having a conversation "to remind his attorney to make a motion to the court in regards to their ongoing criminal case." SAC at 2. Moreover, Hosannah asserts that, at this time, he and his co-defendant "w[ere] [both] shackled [with] hands behind their back and chain[s] around their feet and the elevator is the only means to the courtroom." *Id.*; *see* Pl. 56.1 at 2. After Judge Carter made the statement at the hearing outside of Hosannah's presence, Plaintiff alleges that his attorney attempted to clarify with the judge that the statement court personnel overheard was misinterpreted. SAC at 2. Hosannah's attorney, Mr. Delle, stated,

> My client and Mr. Forrest were discussing that their attorneys should make a motion to suppress the video. They were discussing that in the elevator on the way up here . . . . Based on a misunderstanding during the luncheon recess in the pens, all the clients, I believe were held handcuffed and shackled. I don't see a reason for that, without any – if it's just a misunderstanding.

*Id.* at Ex. B at 1-2.

On April 10, 2014, Judge Carter's Court Clerk, Thomas Capodanno, reported to NCCC officials about what he overheard at the court six days prior between Hosannah and his co-defendants, indicating that they were going to "take action" against the court and/or correction officers. Def. 56.1 ¶ 11; Def. Mot., Ex. I at 5. Defendants allege, and Plaintiff disputes, that Hosannah or one of his co-defendants said, "give me the head nod and we'll make our move." Def. 56.1 ¶ 11. Following this report from the Court Clerk, Plaintiff was classified as an "escape risk" by the Nassau County Sheriff's Department Division of Corrections on April 10, 2014. Def. 56.1 ¶

4

10; Def. Mot., Ex. I at 3.  This classification resulted in a no-contact order with Hosannah's co-defendants who were also at NCCC.  Def. 56.1 ¶ 12.

After Plaintiff was assigned this classification, Hosannah faced administrative segregation for 26 months.  Pl. Opp. ¶ 7.  He was subject to 23-hour lock-in every day, Pl. 56.1 at 2, and he was limited in his time to use the law library, hindered in his receipt of medical treatment and deprived of visits by loved ones.  SAC at 5-6.  He also claims that his administrative classification prevented him from attending his weekly religious services and was purportedly told by NCCC officials, which Defendants dispute, that he was not entitled to attend services while a pretrial detainee.  *Id*. at 6.  According to Plaintiff, to attend any appointment or service, his classification required that he be escorted at all times, but often there was no officer available to transport him.  *Id*. at 4.  Hosannah also claims he was unable to attend his wife's funeral in August of 2014 and did not receive counseling because of his administrative classification.  *Id*.  Finally, Plaintiff alleges, "The Nassau County Jail officials placed [him] in segregation as punishment for unrelated disciplinary reasons, and not any governmental objective," Pl. Opp. ¶ 3, although Hosannah does not explain his basis for this conclusion.

Consistent with this claim, however, Defendants offer evidence, which Plaintiff disputes, that Hosannah had multiple prior disciplinary problems during his incarceration "including but not limited to fighting, refusing to obey orders and using another inmate's identification."  Def. 56.1. ¶ 16; *see generally* Def. Mot., Ex. L.  As a

result, at various instances during his incarnation at NCCC, Plaintiff was subject to "Keep Lock" orders.  Def. 56.1. ¶ 16.

Plaintiff filed grievances regarding his administrative classification on May 2, 2014, August 23, 2014, December 24, 2014, and June 12, 2015.  *See* SAC, Ex. C; *id.* at Ex. D; *id.* at Ex. E; *id.* at Ex. K at 2.  Hosannah also sent a letter to Defendant Golio, multiple letters to Defendant Hess, and still other letters to the Chief Administrative Officer on March 3, 2015, and July 29, 2015, *id.* at Ex. G at 1-3, 6; *id.* at Ex. K at 1, as well as other NCCC officials concerning his classification.  *Id.* at Ex. G at 1-7.  Defendants counter that Hosannah filed as many as nine grievances regarding his administrative classification during the 26 months he was deemed an "escape risk," but claim that he did not file any further grievances or appeals, which Plaintiff disputes.  Def. 56.1 ¶¶ 15, 18; Pl. Opp. ¶ 8.

Hosannah alleges that, in any event, there was no investigation completed "to determine the basis of Plaintiff being deemed an escape risk," and "mere speculation of what the County Court Clerk thought he heard [ ] resulted on his wrong interpretation."  SAC at 5.  In support of his position, Hosannah asserts that there is "no documentary evidence of any investigation(s) conducted by the officials at the Nassau County Jail to support their illegal determination that Plaintiff was allegedly planning an escape,"  Pl. 56.1 at 1, nor did Defendants create a "Misbehavior Report" or written infraction detailing his actions violating any rules, and no hearing was conducted to determine whether administrative segregation was appropriate for 26 months.  *Id.* at 2.  Defendants dispute these allegations and offer evidence that

Plaintiff's "escape risk" designation was reviewed on April 10, 2014 and July 12, 2016. Def. 56.1 ¶ 17.

## B. **Procedural History**

As set forth above, Hosannah filed a Complaint in this action on February 26, 2016 against various officers, *see* DE [1], and an Amended Complaint on July 29, 2016 against unnamed Nassau County Officers and NCCC, *see* DE [9]. Hosannah alleged various federal claims under the First, Eighth, Thirteenth, and Fourteenth Amendments after he was classified as an "escape risk." *See* DE [9] at 1. The Amended Complaint also included various state law claims. *See id.* at 1-2. NCCC filed a motion to dismiss, *see* DE [18], which Magistrate Judge Shields recommended granting with leave for Plaintiff to amend. *See* DE [32].[3] The Honorable Joseph F. Bianco adopted the report and recommendation with leave to amend as to Plaintiff's Fourteenth Amendment due process and deliberate indifference claims and First Amendment claim alleging deprivation of his right to free exercise of religion. DE [34] at 1.[4] The Court dismissed the remaining federal claims with prejudice and declined to exercise supplemental jurisdiction over the state law claims. *Id.*

Hosannah amended his complaint a second time on February 26, 2018 naming Nassau County, John Doe, Golio, and Hess as Defendants. *See* SAC at 1. In the Second Amended Complaint, Hosannah alleges that his administrative classification

---

[3] Magistrate Judge Shields was originally assigned to this case. *See* DE [31]. The case was subsequently reassigned to this Court on January 22, 2020. *See* Electronic Order Dated Jan. 22, 2020.
[4] Then District Judge Bianco was originally assigned to this case. *See* DE [7]. The case was subsequently reassigned to Judge Brown on January 31, 2020. *See* Electronic Order Dated Jan. 31, 2020.

as an "escape risk" while a pretrial detainee at NCCC violated his First Amendment and a Fourteenth Amendment rights under 42 U.S.C. § 1983. *Id.* More specifically, Plaintiff alleges that: (1) after Defendants classified Hosannah as an "escape risk" he was unable to attend weekly religious services; (2) his administrative classification as a pretrial detainee constituted an illegal punishment that violated his due process rights; and (3) Defendants were deliberately indifferent to his rights under the Fourteenth Amendment. *Id.* at 1, 3.

Defendants filed an Answer to the Second Amended Complaint on July 9, 2018. *See* DE [50]. Discovery followed, *see* DE [64], closing on January 5, 2021, *see* DE [76]. Soon after, Defendants requested a pre-motion conference before Judge Brown, which included their Rule 56.1 Statement. *See* Defendants' Letter Motion for Pre-Motion Conference ("Def. Letter"), DE [79]. Plaintiff responded to Defendants' Rule 56.1 statement on April 13, 2021. *See* Pl. 56.1. At the pre-motion conference on April 22, 2021, Judge Brown narrowed the parties' summary judgment briefing to two issues: (1) Plaintiff's alleged due process claim based on his administrative classification, and (2) Defendants' affirmative defense that Plaintiff failed to exhaust the available prison remedies under the Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e(a). *See* Apr. 22, 2021 FTR Rec. at 1:15-2:00. After reviewing the Complaint broadly, Judge Brown found these two claims to be at least cognizable and appropriate for summary judgment motion practice. *See id.* at 6:20-6:40, 9:30-10:18. All other claims were dismissed. *See id.* at 6:20-6:40.

On June 28, 2021, Defendants filed their motion for summary judgment addressing these two issues, which Plaintiff opposes.   *See* Defendants' Memorandum of Law in Support of their Motion for Summary Judgment ("Def. Mem."), DE [87-1]; Pl. Opp.; Reply Memorandum of Law in Further Support of County Defendants' Motion for Summary Judgment ("Def. Reply"), DE [89].   Judge Brown referred Defendants' motion to this Court for a Report and Recommendation.   *See* Electronic Order Dated July 6, 2021.   For the reasons set forth below, the Court recommends the motion be granted in part and denied in part.

## I.   LEGAL STANDARDS

### A.   <u>Summary Judgment Standard</u>

Pursuant to Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate.   *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004).   In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

9

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted) (emphasis in original); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party.").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6 n.10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

**B. <u>Standard for Review of *Pro Se* Filings</u>**

It is well-established that pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S. Ct. 173 (1980); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal citations omitted). The Second

Circuit has held that a court reviewing a *pro se* complaint must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 146 (2d Cir. 2002) (internal alterations omitted); *see also Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541 (E.D.N.Y. 1999) (holding that a court must "make reasonable allowances so that . . . *pro se* plaintiffs do not forfeit their rights by virtue of their lack of legal training."). Nevertheless, the court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Ogunmokun v. Am. Educ. Servs./PHEAA*, No. 12-CV-4403, 2014 WL 4724707, at *3 (E.D.N.Y. Sept. 23, 2014) (quoting *Molina v. New York*, 956 F. Supp. 257, 259 (E.D.N.Y. 1995)).

### C. Legal Standard for 42 U.S.C. § 1983 Claims

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Although section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cnty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983); *see also Dubin v.*

*Cnty. of Nassau*, 277 F. Supp. 3d 366, 384 (E.D.N.Y. 2017) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

## II.   DISCUSSION

Defendants' motion for summary judgment addresses two issues: (1) whether Plaintiff's administrative classification gives rise to a constitutional due process violation, and (2) whether Plaintiff failed to exhaust the available prison remedies under the PLRA. Def. Mem. at 1. Applying the standards outlined above, and for the reasons set forth below, the Court recommends Defendants' motion be granted as to Plaintiff's substantive due process claim against the Individual Defendants based on qualified immunity and denied on all other grounds.

### A.   Hosannah's Fourteenth Amendment Claims Regarding His Administrative Classification

Initially, Defendants argue that Plaintiff cannot establish that his administrative classification rose to the level necessary for a due process violation because "Plaintiff's 'escape risk' classification, and any associated restricted conditions, [were] reasonably related to legitimate government objectives." Def. Mem. at 5. Hosannah counters that his confinement based on his administrative classification, coupled with no opportunity for a hearing to challenge the designation, was an unlawful punishment and not pursuant to a valid governmental objective, violating his due process rights under the Fourteenth Amendment. Pl. Opp. ¶¶ 3-7.

It is not clear from Plaintiff's Second Amended Complaint and the parties' summary judgment briefing whether Plaintiff is making, and Defendants are seeking to dismiss, a substantive due process claim, a procedural due process claim, and/or a

deliberate indifference claim under the Fourteenth Amendment.[5]   Rather, Defendants address Plaintiff's claims generally under a due-process umbrella.   *See* Def. Mem. at 3.   For sake of a complete record, the Court discusses each separately.

### 1. Substantive Due Process

Initially, Defendants' motion addresses Plaintiff's claim as a substantive due process claim under the Fourteenth Amendment, arguing that Plaintiff's administrative status did not raise a liberty interest necessary to support a cause of action.   Def. Mem. at 5.   "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872 (1979).   In assessing whether restrictions on pretrial detainees comport with substantive due process, the "court must decide whether the [restriction] is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id*. at 538, 99 S.Ct. 1861, 1873. Absent proof of intent to punish, "that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.'" *Id*. (quoting *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 567-58 (1963) (alteration in original)).

---

[5] Indeed, Plaintiff also refers to an Eighth Amendment cruel and unusual punishment claim in his Rule 56.1 statement and opposition to Defendants' motion.   *See* Pl. 56.1 at 6; Pl. Opp. ¶ 5.   Because the evidence in the record only shows Hosannah was a pre-trial detainee at the time of the events at issue, however, *see* Def. 56.1 ¶ 1, this claim should be treated as a deliberate indifference claim governed by the Fourteenth Amendment due process clause.   *See Darnell v. Piniero*, 849 F.3d 17, 29, 35-36 (2d Cir. 2017) (adopting the Ninth Circuit standard as articulated in *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016), applying the Fourteenth Amendment due process clause to claims involving alleged deliberate indifference to unconstitutional conditions of confinement for pretrial detainees).

Further, "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Wolfish*, 441 U.S. at 539, 99 S.Ct. at 1874.

The Second Circuit has determined that administrative segregation does not violate substantive due process rights where it is in response to specific evidence that the detainee posed a risk to institutional security, and where the measures were not excessive in relation to that purpose. *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55-56 (2d Cir. 2017); *see Cabral v. Strada*, 513 Fed. Appx. 99, 103 (2d Cir. 2013) (rejecting a substantive due process claim where pretrial detainees were placed in segregated housing after prison officials received reports from confidential informants that, *inter alia*, a "green light" had been issued by rival gang members to physically attack other detainees); *Taylor v. Comm'r of N.Y.C. Dep't of Corr.*, 317 Fed. Appx. 80, 82 (2d Cir. 2009) (rejecting a substantive due process claim where pretrial detainee was placed in segregated housing after being "implicated in an assault against an inmate who subsequently died"). "At some point, however, the administrative necessity for involuntary lock-up begins to pale. Indeed, after nine months, it smacks of punishment." *Covino v. Vermont Dep't of Corr.*, 933 F.2d 128, 130 (2d Cir. 1991). A restriction related to a legitimate goal such as institutional security will still be punitive if it is excessively harsh. *Milling*, 876 F.3d at 57 (citing *Wolfish*, 441 U.S. at 538, 99 S.Ct. 1861 at 1874).

Applying these standards, Hosannah has established an issue of material fact on his substantive due process claim. Plaintiff was initially placed in administrative segregation for a legitimate governmental purpose when Judge Carter expressed a security concern regarding Hosannah and his co-defendants, Def. 56.1 ¶ 9, and after the judge's court clerk reported that he heard Plaintiff and one of his co-defendants saying, "give me the head nod and we'll make our move" when they were attending a court conference on April 4, 2014. *Id.* at ¶ 11. Following this report from the court clerk, Nassau County Sheriff's Department officials conducted a review and determined Hosannah was a possible "escape risk." Def. 56.1 ¶ 10; Def. Mot., Ex. I at 3. Accordingly, even drawing all inferences in Plaintiff's favor, the initial administrative classification was for a legitimate governmental objective.

Nevertheless, Plaintiff was kept in lockdown 23 hours per day for 26 months, and Hosannah claims that he requested that his classification be reviewed multiple times in writing, yet Defendants do not present evidence of any interim review or additional support for such a lengthy administrative segregation. *See* Pl. Opp. ¶ 8. While Defendants do submit evidence that Hosannah had a history of disciplinary problems, *see* Def. 56.1 ¶ 16, there is a question of fact as to whether this supports Plaintiff's argument that his administrative classification was for punishment rather than a legitimate governmental objective. Pl. Opp. ¶ 3. Looking in light most favorable to the non-moving party, a reasonable jury could conclude that, at some point, the 26-month administrative segregation without further review became punitive or excessive in relation to the County's institutional security. Because a

15

genuine issue of material fact exists, the Court recommends Defendants' motion be denied on these grounds.

## 2. *Procedural Due Process*

Next, Defendants argue that Hosannah cannot establish a sufficient liberty interest for a Fourteenth Amendment procedural due process claim because Plaintiff was not entitled to a hearing on his administrative classification, and the regulation "that governs county jail classifications (9 NYCRR 7013) contains no such hearing requirement." Def. Reply at 2. In other words, Hosannah received all the process he was due.

"[L]iberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Benjamin v. Fraser*, 264 F.3d 175, 188 (2d Cir. 2001). (quoting *Youngberg v. Romeo,* 457 U.S. 307, 316, 102 S.Ct. 2452, 2458 (1982) (internal quotation omitted)). To state a claim under section 1983 for denial of procedural due process arising out of administrative segregation, a plaintiff must show both that he: (1) possessed an actual liberty interest; and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004). To establish a liberty interest, convicted prisoners must satisfy a stringent "atypical and significant hardship" standard, as outlined in *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995). Pretrial detainees, however, do not need to meet this high standard. *See Jeffers v. City of New York*, No. 13-CV-3305 JG, 2013 WL

5437337, at *3 (E.D.N.Y. Sept. 27, 2013) (quoting *Benjamin v. Fraser*, 264 F.3d 175, 188, 188–89 (2d Cir. 2001)).

Applying these principles, Plaintiff has established a sufficient liberty interest at stake. As explained above, Plaintiff was a pretrial detainee placed in administrative segregation for 26 months, which, according to Defendants, was not reviewed by NCCC officials during that entire time period. *See* Def. 56.1 ¶ 17. This restraint on Hosannah's liberty is sufficient to defeat Defendants' motion on this point because a reasonable jury could conclude that a 26-month administrative segregation without review or response to inmate challenges became excessive in relation to the purpose of institutional security.

Further, there is a material issue of fact as to whether Plaintiff received appropriate process. It is well established that whenever process is constitutionally due, it "must be granted at a meaningful time and in a meaningful manner." *Proctor v. LeClaire*, 846 F.3d 597, 609 (2d Cir. 2017) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191 (1965)). Prior to placing an inmate in administrative segregation, prison officials must provide "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to [administrative segregation,] although not necessarily a full hearing." *LeClaire*, 846 F.3d at 609 (internal quotation omitted). Once this has occurred, officials need only conduct an informal review to determine whether segregation is justified, and the final decision may rest on "purely subjective evaluations and on predictions of future behavior." *Id*. (internal quotation omitted);

17

*Ford v. Deacon*, 793 F.App'x 13, 17 (2d Cir. 2019).  Moreover, due process mandates that prison officials "periodically review" whether an inmate continues to pose a threat to the facility.  *LeClaire*, 846 F.3d at 601.  Finally, where a "state by statute or regulation prescribes mandatory procedures that govern administrative segregation, it thereby creates a liberty interest in remaining in the general prison population," and the court should analyze the applicable state procedures to determine that they comply with constitutional due process requirements.  *Covino*, 933 F.2d at 129-30.

Consistent with these standards, New York State regulations mandate written notice regarding an inmate's administrative classification although no hearing is required.  *See* 9 N.Y. Comp. Codes R. & Regs. ("NYCCR") § 7013.8(f).  "[T]he chief administrative officer of each correctional facility shall establish, implement and maintain a formal and objective system for the consistent classification of all inmates."  9 NYCCR  § 7013.1.  Classification refers to "the process of assigning inmates to appropriate housing by determining security and supervision requirements and inmate special needs," which may include "punitive or other administrative segregation."  *Id*. at § 7013.2.  The chief administrative officer shall develop written policies, which must include procedures regarding "inmate notification of all classification determinations made subsequent to initial screening and risk assessment."  *Id*. at § 7013.2.  In addition, "[w]ithin one business day after each classification determination is made, facility staff shall notify the inmate in writing of the determination and explain its implications."  *Id*. at § 7013.8(f).  The regulations do not, however, address where, when, and how such classifications may

be challenged and/or reviewed, and Defendants' motion papers do not address this issue.

Based on the evidence submitted by the parties, the Court cannot determine, as a matter of law, that Plaintiff received adequate procedural due process. Initially, Plaintiff's first grievance regarding his administrative classification dated May 2, 2014, indicates that he does not know why he was being individually escorted around NCCC and why there was a no-contact order concerning his co-defendants. *See* Def. Mot., Ex. J at 1. Although the investigation of the grievance dated May 7, 2014 states "I'm receipt, memo on escape risk," *see id*. at 2, which could indicate that Hosannah received a written copy of his classification determination at this time, this was almost one month after he was placed in administrative segregation. Moreover, despite the initial determination, Hosannah received no subsequent review of his administrative classification for over two years even though he submitted numerous grievances in the interim. *See* Def. 56.1 ¶ 17; *see e.g.*, Def. Mot., Ex. K. at 14, 30, 33.

This evidence demonstrates a genuine issue of material fact as to when, if ever, Plaintiff received written notice of his escape risk classification, which was required under the Fourteenth Amendment due process clause and New York regulations, and whether he received sufficient review of his multiple challenges to this designation over the next 26 months. Accordingly, the Court recommends Defendants' motion be denied as to Plaintiff's procedural due process claim.

### 3.  *Deliberate Indifference*

Construing Plaintiff's papers liberally, Hosannah appears to raise a deliberate indifference claim under the Fourteenth Amendment although it is not clear whether it is against all Defendants and what this claim entails.[6]  In any event, Defendants do not discuss this claim in their motion.  For the sake of a complete record, however, the Court briefly addresses a Fourteenth Amendment claim of unconstitutional conditions of confinement based on a theory of deliberate indifference against Defendants Hess and Golio.

A pretrial detainee may establish a section 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions.  *See Benjamin*, 343 F.3d at 50.  In order support a pretrial detainee's deliberate indifference claim, a plaintiff must satisfy a two-prong test, establishing that: (1) he was incarcerated under conditions posing a substantial risk of harm; and (2) that the defendants acted intentionally, or recklessly failed to act with reasonable care to mitigate the risk even though the defendants knew, or should have known, that the conditions posed an excessive risk to health or safety.  *Barnes v. Harding*, 368 F. Supp. 3d 573, 596 (W.D.N.Y. 2019) (citing *Darnell v. Piniero*, 849 F.3d 17, 29, 35-36 (2d Cir. 2017)).  The second prong is consistently applied under an objective standard.  *Barnes*, 368 F. Supp. 3d at 596; *see Darnell*, 849 F.3d at 35 (the second *mens rea* prong is "defined objectively").

---

[6] For instance, Plaintiff does not indicate what type of deliberate indifference claim he brings.  Judge Bianco in his adoption of Judge Shields's Report and Recommendation granting the Defendants' motion to dismiss allowed Plaintiff leave to amend his complaint limited to a "due process claim of deliberate indifference and his First Amendment claim alleging deprivation of his free exercise of religion."  DE [34] at 1.  Plaintiff appears to bring a general "due process deliberate indifference claim," so the Court addresses it as a Fourteenth Amendment deliberate indifference to conditions of confinement claim against Defendants Hess and Golio.  *See* SAC at 1.

Applying the law stated above, factual issues remain as to whether Hosannah's conditions of confinement amounted to a substantial risk of harm and whether Defendants acted with reasonable care to mitigate that harm. Plaintiff alleges several issues regarding his conditions of confinement while at NCCC, including that he faced a 23-hour lock down for 26 months. Pl. 56.1 at 2. He was required to be handcuffed with a chain around his waist and both legs "in a van with no seat belt in a 4 feet high and 3 feet wide box to and from court everytime." SAC at 4. Plaintiff was unable to attend his wife's funeral in August 2014 and was unable to speak with a mental health counselor after his loss. *Id.* Hosannah further claims that his administrative classification prevented him from attending his weekly religious services. *Id.* at 6. This was often because his classification required an individual escort, but there was often no officer available to transport him for these purposes. *Id.* at 4. Defendants do not dispute the facts surrounding Hosannah's conditions of confinement or submit evidence to the contrary.

Moreover, regarding Defendants' actions, Plaintiff wrote to Defendants Golio and Hess concerning his administrative classification asking them to investigate the matter. SAC, Ex. G at 1, 3, 6. Defendant Golio was aware of Plaintiff's escape risk classification as early as June 12, 2014 after an inquiry by the Nassau County District Attorney who was prosecuting Plaintiff's underlying criminal case. *See* SAC, Ex. F. Nevertheless, Defendants only submit evidence that Hosannah's classification was reviewed by NCCC officials on April 10, 2014, and over two years later on July 12, 2016. Def. 56.1 ¶ 17.

Based on this evidence, questions of fact remain regarding whether Plaintiff's 26-month administrative classification without any further review caused substantial risk of harm to Hosannah's health and safety and, if so, whether Defendants acted with reasonable care to mitigate the risk. Accordingly, the Court recommends Defendants' motion be denied regarding Plaintiff's deliberate indifference claim.

## B. <u>Exhaustion under the PLRA</u>

Next, Defendants argue that Plaintiff's lawsuit must be dismissed under the PLRA, because Hosannah did not exhaust his remedies in the prison administration system by appealing the Grievance Coordinator's decision. Def. Mem. at 7. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see generally Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378 (2006); *Davis v. Barrett*, 576 F.3d 129, 132 (2d Cir. 2009). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 992 (2002)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function

effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91, 126 S.Ct. at 2386. Therefore, the exhaustion inquiry requires a court to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal*, 558 F.3d at 124, (citing *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910 (2007); *Woodford*, 548 U.S. at 88–90, 126 S.Ct. at 2378.)).

"Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available to the prisoner." *Macias v. Zenk*, 495 F.3d 37, 40 (2d Cir. 2007) (quoting *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004)). The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether their own actions inhibited the inmate's exhaustion of remedies and may estop the defendants from raising the defense. *Id.* If the court finds that administrative remedies were available to the plaintiff, and the defendants have not forfeited their non-exhaustion defense, the court should consider "whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." *Id.*

Although not submitted in their motion papers, Defendants' pre-motion letter to Judge Brown states that "[f]or inmates at NCCC to exhaust their remedies, the inmates must first write to the grievance unit whereby the Grievance Coordinator issues a decision that inmates must then appeal to the Chief Administrative Officer. *Nassau County Correctional Center Inmate Handbook*, 4. Thereafter, inmates must

appeal the Administrative Officer's decision to the N.Y.S Commission of Correction whereby the final administrative remedy is issued. *Id*. at 4-5." Def. Letter at 3. Defendants argue in their motion that "Plaintiff filed no further appeals of the Grievance Coordinator's decision as shown by Plaintiff's Amended Complaint and County Defendants' Exhibit [K]." Def. Mem. at 8.

Defendants' evidence does not support their affirmative defense sufficient to grant summary judgment.[7] Hosannah submitted numerous grievances as a pretrial detainee at NCCC, many of which are related to his administrative classification. Def. 56.1 ¶ 16. At least two of the grievances related to Plaintiff's claims marked the appropriate place on the form to indicate that he was appealing the Grievance Coordinator's determination, yet there is no further decision by the Chief Administrative Officer. *See* Def. Mot., Ex. K at 30, 33. Additionally, Plaintiff's filings include two letters addressed to the Chief Administrative Officer on March 3, 2015 and July 29, 2015, regarding his grievances related to his escape risk classification, SAC, Ex. G at 2; *id*. at Ex. K at 1, although there is no response, and Hosannah wrote letters to Defendants Golio and Hess while he was in administrative segregation, again with no response. *Id*. at Ex. G at 1, 3, 5. Further, Defendants' evidence includes multiple Grievance Investigation Forms from the New York State Commission of Correction, which based on Defendants' pre-motion letter, is the final step Plaintiff must complete in the appeals process. Def. Letter at 4-5; *see* Def. Mot. Ex. K at 31.

---

[7] Initially, the Court notes that under the applicable New York regulations regarding county jail grievance procedures, administrative segregation housing decisions are not grievable. *See* 9 NYCCR § 7032.4. Defendants, however, accepted at least two of Plaintiff's grievances regarding his administrative classification. *See* Def. Mot., Ex. K at 30, 33.

In light of this evidence, it appears that Hosannah did all he could have reasonably done to assert his rights. Accordingly, summary judgment is inappropriate based on Defendants' PLRA argument, and the Court recommends that it be denied on these grounds.

### C. Plaintiff's Claims Against Nassau County

Next, Defendants argue that Nassau County must be dismissed from this action because Plaintiff has failed to submit sufficient evidence of a policy or procedure that purportedly created his injuries under *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 658-59, 98 S. Ct. 2018, 2019-20 (1978). Def. Mem. at 10. Municipalities and other local governmental entities may be held liable under 42 U.S.C. § 1983 for constitutional violations caused by the municipality through an official policy or custom. *See Monell*, 436 U.S. at 658-59, 98 S. Ct. at 2019-20. The "policy or custom" element may be established by demonstrating: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees. *See Kucharczyk v. Westchester Cnty.*, 95 F. Supp. 3d 529, 538-39 (S.D.N.Y. 2015) (citing *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y.

2010)); *see also Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 419 (S.D.N.Y. 2008).

Here, Plaintiff appears to allege a respondeat superior theory arguing that Defendant Nassau County should be responsible for its "employee's actions." Pl. Opp. ¶ 11. As Defendants submit, this alone would be insufficient to state a claim against Nassau County under *Monell*. *See* Def. Mem. at 10; *see, e.g.*, *Banner v. Nassau Cty. Corr. Facility*, No. 12-CV-5344 SJF GRB, 2012 WL 6050558, at *3 (E.D.N.Y. Dec. 3, 2012) (citing *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036) ("It is well-established that a municipality or municipal entity, such as Nassau County, cannot be held liable under section 1983 on a *respondeat superior* theory.").

Hosannah, however, also argues that because the County held him in segregation after being deemed a "escape risk" without "affording a detainee a hearing violates minimum due process." Pl. Opp. ¶¶ 9, 11. Construing Plaintiff's papers broadly, Hosannah has established a question of material fact whether the formal policy at NCCC regarding administrative classification caused him a denial of his constitutional rights. As stated above, although Defendants argue that the New York regulations regarding inmate classification do not require a hearing, Def. Reply at 2, Defendants do not offer any NCCC-specific procedures regarding an opportunity to challenge or periodic review of inmate classification. Additionally, the applicable state regulations do not articulate where, when, and how such classifications may be challenged and/or reviewed.[8] Drawing all inferences in Plaintiff's favor, a reasonable

---

[8] The Court notes that the New York regulations provide minimum notice, review, and hearing requirements for *disciplinary* segregation in county jails. *See* 9 NYCCR §§ 7006.4-7006.8. In addition,

jury could conclude that NCCC policy, or lack thereof, concerning resolution of challenges to pretrial detainees' administrative classifications, caused a violation of Hosannah's procedural due process rights.  Accordingly, the Court recommends that Defendants' motion for summary judgment for Nassau County under *Monell* be denied.

### D. Qualified Immunity

Finally, notwithstanding the above questions of material fact, the Individual Defendants argue that they should be shielded from liability by the doctrine of qualified immunity.  Def. Mem. at 11.  Qualified immunity protects municipal officials from both civil damages and "unnecessary and burdensome discovery or trial proceedings[,]" S*pavone v. New York State Dep't of Corr. Services*, 719 F.3d 127, 134 (2d Cir. 2013) (quoting C*rawford–El v. Britton*, 523 U.S. 574, 598, 118 S. Ct. 1584, 1596 (1998)), "where the officials' conduct was not in violation of a 'clearly established' constitutional right."  *Sudler v. City of New York*, 689 F.3d 159, 174 (2d Cir. 2012), cert. denied, 569 U.S. 1018, 133 S. Ct. 2777 (2013).  The right must be "'clearly established' at the time of the challenged conduct."  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal citation omitted).  Qualified immunity extends to circumstances where an official's conduct" does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,"

---

a detainee "who threatens the safety, security, and good order of the facility may be immediately confined in a cell or room pending a disciplinary hearing and may be retained in administrative segregation until the completion of the disciplinary process." 9 NYCCR § 7006.7.  There does not appear to be a formal process for review of or challenges to administrative segregation for pretrial detainees however.

and applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Spavone*, 719 F.3d at 135 (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009)). "So long as a defendant has an objectively reasonable belief that his actions are lawful, he is entitled to qualified immunity." *Spavone*, 719 F.3d at 135 (internal quotations and citation omitted). "In assessing objective reasonableness, [courts] look to whether officers of reasonable competence could disagree on the legality of the defendant's actions[,]" *McGarry v. Pallito*, 687 F.3d 505, 512 (2d Cir. 2012) (internal quotations and citation omitted); *see also Manganiello v. City of New York*, 612 F.3d 149, 165 (2d Cir. 2010), in light of the "particular factual context" he confronted. *Zalaski v. City of Hartford*, 723 F.3d 382, 389 (2d Cir. 2013). "In short, if at least some reasonable officers in the defendant's position could have believed that [the challenged conduct] was within the bounds of appropriate police responses, the defendant officer is entitled to qualified immunity." *Id.* (brackets in original) (internal quotations and citation omitted).

Applying these principles, while the Individual Defendants contend that they should be protected by qualified immunity, the evidence does not support their affirmative defense sufficient to warrant summary judgment on all of Hosannah's claims. Initially, regarding Plaintiff's substantive due process claim, the Second Circuit's 2017 decision in *Almighty Supreme Born Allah v. Milling* found that although the defendants violated a pretrial detainee's substantive due process rights when he was placed in administrative segregation for over a year without a legitimate

28

governmental purpose, Defendants were entitled to qualified immunity. *Milling*, 876 F.3d at 55–56. The Court stated that the general principle articulated in *Wolfish*, without more, "does not clearly establish that a substantive due process violation would result" from Plaintiff's placement in administrative segregation based solely on Defendants following an established procedure, which is what appears to have happened here. *Id.* at 59. The Court indicated that it was close to the line, but it "is a fine one that would not necessarily be apparent to prison officials in the absence of specific judicial evaluation of the practice." *Id.* at 60. Following this precedent, the law is sufficiently clearly established as to Hosannah's substantive due process claim under *Milling* as of 2017, but because the challenged conduct occurred before *Milling* was decided, the Individual Defendants did not have adequate notice that their actions violated Plaintiff's constitutional rights. Accordingly, the Court recommends granting summary judgment on Plaintiff's substantive due process claim as to the Individual Defendants based on qualified immunity grounds.

Nevertheless, Plaintiff's procedural due process claim based on punitive confinement as a pretrial detainee without written notice or periodic review invokes a clearly established right in the Second Circuit. *See Taylor v. Rodriguez*, 238 F.3d 188, 192 (2d Cir. 2001) ("The Supreme Court requires that, assuming the existence of a liberty interest, a prisoner placed in administrative segregation be provided 'some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.'") (quoting *Hewitt v. Helms*, 459 U.S. 460, 476, 103 S.Ct. 864, 874 (1983));

29

*LeClaire*, 846 F.3d at 609 (Due process requires "meaningful periodic review" of administrative segregation in prisons.); *Benjamin*, 264 F.3d at 190 ("There is no substantial government need for denying subsequent review of the justification for imposing painful and potentially harmful restraints."). As the Second Circuit has established, putting a pretrial detainee in administrative segregation without minimum notice or periodic review violates due process rights of which a reasonable person would have known.

Because there is an issue of material fact as to whether Plaintiff was afforded adequate due process entitled under New York and federal law, Defendants do not meet their burden to establish that Golio and Hess are shielded by qualified immunity regarding Plaintiff's procedural due process claim. *See Outlaw v. City of Hartford*, 884 F.3d 351, 367 (2d Cir. 2018) ("Qualified immunity is an affirmative defense on which the defendant has the burden of proof." To the extent that a particular finding of fact is essential to an affirmative defense, "it is incumbent on [the defendant] to request that the [factfinder] be asked the pertinent question.") (alterations in original) (citations omitted). Accordingly, the Court recommends that Defendants' motion be denied on this issue, and the procedural due process claim proceed to trial as to all Defendants.

Finally, the Individual Defendants are also not entitled to qualified immunity on Plaintiff's claim that Golio and Hess were deliberately indifferent to his conditions of confinement without any subsequent review of his classification. As explained above, a question of fact remains regarding whether Plaintiff's 26-month

administrative segregation without sufficient due process caused substantial risk of harm to Hosannah's health and safety. This element of deliberate indifference requires a determination whether the facts support Plaintiff's alleged injury and potential damages, which must be resolved by the trier of fact before the Court can decide, as a matter of law, that Defendants are entitled to qualified immunity on this point. *See Outlaw*, 884 F.3d at 367. Because Defendants have not met their burden of proof for their qualified immunity defense and factual issues remain, the Court recommends denying Defendants' motion on Plaintiff's deliberate indifference claim.

## III.    CONCLUSION

For the reasons set forth above, the Court respectfully recommends Defendants' motion be granted as to Plaintiff's substantive due process claim as to the Individual Defendants based on qualified immunity grounds and denied on all other grounds.

## IV.    OBJECTIONS

A copy of this Report and Recommendation is being served on Defendants by electronic filing on the date below. Defendants are directed to serve a copy of it on Plaintiff via first-class mail and promptly file proof of service by ECF. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Ferrer v. Woliver,* No. 05-3696,

2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir. 2003).

Dated:    Central Islip, New York

December 8, 2021

/s/ Steven I. Locke
STEVEN I. LOCKE

United States Magistrate Judge

32