```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DAVID HOSANNAH,

                    Plaintiff,                                MEMORANDUM AND
                                                              ORDER
        - against -
                                                              16-CV-1045 (GRB)(SIL)

NASSAU COUNTY, CAPTAIN MICHAEL R.
GOLIO, CAPTAIN HESS, AND JOHN DOE,

                    Defendants.
----------------------------------------------------------X
```

**GARY R. BROWN, United States District Judge**:

Plaintiff, proceeding *pro se*, brings this 42 U.S.C. § 1983 action alleging his classification as an escape risk while in pre-trial detention violated the Due Process Clause of the Fourteenth Amendment. Before this Court is the Report and Recommendation of Magistrate Judge Steven Locke recommending the denial of defendants' motion for summary judgment but granting the individual defendants qualified immunity as to plaintiff's substantive due process claim. *See* Docket Entry ("DE") 93. For the reasons stated herein, based on unrefuted evidence that was not before Judge Locke, the Report and Recommendation is reversed in part and defendants are granted summary judgment on all claims.

*Procedural History*

The procedural history of this case as set forth in Judge Locke's Report and Recommendation is hereby incorporated by reference. *See* DE 93 at 7-9. In December 2021, defendants filed objections to the Report and Recommendation, arguing that plaintiff was never subject to administrative segregation. DE 96. This Court ordered the parties to offer more evidence regarding the circumstances of plaintiff's alleged administrative segregation. *See* Electronic Order dated 1/18/2022. Mindful of plaintiff's *pro se* status, the Court advised plaintiff

1

that he may provide additional evidence by submitting a sworn statement with more details describing the conditions of his administrative segregation, providing corroborating witness testimony, and any other evidence plaintiff would like the Court to consider.  *Id.*  Following this Court's order, the parties filed additional affidavits and records evidencing the conditions of plaintiff's confinement.  *See* DEs 97-100, 102.

*Facts*

Familiarity with the facts as set forth in Judge Locke's Report and Recommendation is assumed and are hereby incorporated by reference to the extent they are not inconsistent with this opinion.  Plaintiff was an inmate at the Nassau County Correctional Center (NCCC) from September 14, 2013 to October 11, 2016.  DE 79-1, Def. R. 56.1 Statement, ¶ 1.  Plaintiff was convicted of robbery and criminal possession of a weapon in October 2015, sentenced to 20 years, and released to state custody a year later.  *Id.*, ¶¶ 1, 6-8.

While in pre-trial detention, the NCCC designated plaintiff an escape risk after he was overheard making certain statements to a codefendant at a court appearance on April 4, 2014.  That day, plaintiff appeared in Nassau County Court before Judge Carter, who stated on the record that "security staff is concerned that these four defendants may not have a regard for security in this courtroom" and "[a]s a consequence, I have been asked by my sergeant if I would consent to . . . keeping the defendants shackled."  DE 79-1, ¶ 9; DE 87-11 at 3.  On April 10, 2014, Judge Carter's clerk notified NCCC personnel that plaintiff and his codefendant were overheard in the elevator saying "give me the head nod and we'll make our move."  DE 79-1, ¶ 11; DE 87-12 at 5.  That same day, the NCCC designated plaintiff as an escape risk and issued a no contact order with plaintiff's codefendant.  DE 79-1, ¶ 12; DE 87-12 at 3-5, 8.

Plaintiff asserts that, as a result of the clerk's report, plaintiff was placed in administrative segregation 23 hours a day for 26 months without a hearing, any written notice, any investigation, or any periodic review of his escape-risk designation. DE 81, Pl. Opp., at 2-5. On May 2, 2014, plaintiff filed a grievance form stating, "Why am I being escorted everywhere I go around this jail" and "now I go to court they cuff me hand foot the entire time my family or lawyer come to visit me and they have to wait hours because one of my codefendant is on visiting floor." DE 87-13 at 2. Plaintiff claims that as a result of his confinement in the administrative segregation unit, visits were delayed or cancelled, he was unable to attend religious services, and could not access the law library. DE 86, Pl. Reply, ¶ 6. Finally, plaintiff alleges he was unable to attend his wife's funeral. DE 38, Second Am. Compl. at 4. Plaintiff's movements were restricted because oftentimes there was no officer available to escort him. *Id.* at 4-7.

In addition to being designated an escape risk, plaintiff was placed on keeplock status for disciplinary violations on seven occasions for periods of time ranging from 12 to 30 days, for a total of 142 days over the course of his three years at the facility. *See* DE 87-15; DE 87-17; DE 96 at 5; DE 98, ¶¶ 10-11. Plaintiff's disciplinary violations included fighting, theft, disorderly conduct, and refusal to obey a direct order, among others. *See* DE 87-15 at 2, 6, 9; DE 98-3. Plaintiff was placed on keeplock status three times before his designation as an escape risk in April 2014, and four times after. *See* DE 87-17; DE 98, ¶¶ 10-11. For each infraction, a disciplinary hearing was held where plaintiff was informed of his rights and given an opportunity to be heard. *See* DE 87-15; DE 98, ¶¶ 10-11.

Plaintiff suggests these keeplock disciplinary sanctions were a cover for imposing administrative segregation. *See* DE 86, ¶ 7 ("Nassau County Jail officials used administrative segregation to cover disciplinary sanctions against this plaintiff."). However, there are no records

3

of plaintiff's supposed administrative segregation. The corrections lieutenant in charge of administrative segregation at NCCC reviewed plaintiff's records and could not locate any of the reports or forms which would have needed to be completed in order to place plaintiff in administrative segregation. DE 97, ¶¶ 1, 9-12. Given the absence of these records, the NCCC corrections lieutenant avers that plaintiff was never placed in administrative segregation. *Id.* In addition, NCCC's location history records do not show that plaintiff was ever transferred in April 2014, when he was allegedly placed in administrative segregation. DE 96-2. Rather, plaintiff remained in the same cell between February 2014 and May 2014. *Id.*

In response to this Court's request for additional evidence regarding the circumstances of the alleged administrative segregation, plaintiff submitted a sworn statement averring that he was "placed on Keep Separate, Escape Risk, Administrative Segregation the entire time he was housed at [NCCC]."[1] DE 102, Pl. Aff., at 1. Notably, plaintiff does not state he was isolated from all other inmates. Nor does he provide any explanation for why NCCC has no records of his administrative segregation. Rather, plaintiff asserts that his "movements required full restraints with solitary movement with correction and court officers only." *Id*. "[P]laintiff's movement was severely limited, and such movement arrangements would take at least twenty minutes to half an hour." *Id.* at 2. Family and friends had to wait "extended periods" of time when visiting, or, "if other codefendants had legal or family visits, plaintiff's legal and family visits were prohibited."

---

[1] Although plaintiff conflates "Keep Separate, Escape Risk, Administrative Segregation," all three categories have distinct meanings. Prisoners in administrative segregation are confined to their cell for 22 hours per day and kept separate from other general population inmates. DE 97, ¶ 8; DE 97-1. Administrative segregation is imposed when an inmate poses a serious threat to life, property, health, self, staff, other inmates or the security of the facility. DE 97-1 at 2. It is *not* imposed for disciplinary reasons. *Id.* at 3. Keeplock status, on the other hand, is a type of disciplinary confinement where the inmate is confined to his own cell. *See McKinnon v. Patterson*, 568 F.2d 930, 936 (2d Cir. 1977) (explaining the differences between keeplock, confinement in a special housing unit, and solitary confinement); *see also* N.Y. Comp. Codes R. & Regs. Tit. 7, § 301.6 ("Keeplock admission"). An escape risk designation is an administrative classification which does not result in segregation status and does not lead to a disciplinary proceeding. DE 97, ¶¶ 14-15.

4

*Id*. Plaintiff claims that "[n]ot one document supports defendant's need to limit all plaintiff's movements while in full restraints, i.e., handcuffed to a waist chain, ankle shackles, with a supervisor escort." *Id.*

In support, plaintiff submitted an unsigned affidavit from his criminal defense attorney dated September 2014 asking the state court to dissolve a "segregation order." DE 102 at 4. The affidavit states NCCC kept plaintiff apart from his codefendants because of their "propensity for dangerous and violent behavior." *Id*. As a result, "[a]ttorney visits are prohibited with the defendant if any codefendant is on visit" and in his attorney's experience, "visits . . . have been limited in . . . time . . . because of the . . . segregation order." *Id*. In addition, "[if] any of the four defendants is in the library, the other three defendants are barred from using the library," "[t]he defendants are not permitted codefendant visits amongst themselves," and "visitation by family and clergy is impeded because . . . if one of them is on a visit, none of the others may visit friends, family member, clergy or even their attorney." *Id*. Finally, plaintiff is "shackled and handled separately whenever transported to court and when moved within the courthouse." *Id*. In addition, plaintiff submitted a June 2014 email where the Assistant District Attorney ("ADA") inquired about separation orders to Officer Golio, who replied, "[t]he separation orders are jail based and are not at the request of [the DA's] office." *Id.* at 10-11. Defendants represent that the keep-separate order was dissolved after a habeas petition was filed in state criminal court challenging said order, and plaintiff was subsequently permitted to be in contact with his codefendants. DE 104 at 2, n.2.

*Standard of Review*

As this Court explained in *McPherson v. Dejoy*, No. CV 19-7139 (GRB)(LB), 2021 WL 4260643, at *1 (E.D.N.Y. Sept. 20, 2021), the standards for reviewing a Report and Recommendation are as follows:

> In reviewing an R&R, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party makes specific and timely objections to a magistrate judge's findings or recommendations as to dispositive motions, the district court must apply a *de novo* standard of review to the portions of the R&R to which the objection is made. Fed. R. Civ. P. 72(b); *see also LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010); 28 U.S.C. § 636(b)(1). However, "general or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." *Caldarola v. Town of Smithtown*, No. 09-CV-272 (SJF) (AKT), 2011 WL 1336574, at *1 (E.D.N.Y. Apr. 4, 2011) (citations omitted). In the absence of objections, the Court may adopt an R&R without de novo review. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."); *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision."); *cf.* 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(3) (requiring de novo review after objections).

The motions for summary judgment underlying Judge Locke's Report and Recommendation are decided under the oft-repeated and well-understood standard of review for these matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd*, 643 F. App'x 54 (2d Cir. 2016), which discussion is incorporated by reference herein. In sum, the question before the Court is whether, based upon the undisputed or improperly disputed facts, the defendants are entitled to judgment. It is with these standards in mind that the Court turns to the motions at bar.

*Discussion*

1. *Due Process*

Relying on plaintiff's assertion that he was "kept in lockdown 23 hours per day for 26 months," the Report and Recommendation recommends denying defendants' motion for summary judgment on the due process claims because a reasonable jury could find that plaintiff's administrative segregation was punitive or excessive in relation to the objective of institutional security. DE 93 at 15-17. Reviewing the record *de novo*, the Court holds that no reasonable jury could find that plaintiff was held in administrative segregation for 26 months and, as such, defendants are entitled to summary judgment on the due process claims.

The record is devoid of any documents evidencing plaintiff's alleged administrative segregation at NCCC. *See* DE 97, ¶¶ 9-12. After the Court ordered plaintiff to provide more details regarding his administrative segregation, plaintiff explained that he was kept separate from his codefendants, not allowed to receive visits when his codefendants had visitors, and was shackled when transported. *See* DE 102 at 1-2. Strikingly, plaintiff no longer asserts that he was held in isolation for 22 hours a day and fails to controvert the prison records which suggest that he was not in administrative segregation for 26 months. Rather, plaintiff submitted a 2014 affidavit from his attorney which stated that visits are prohibited if a codefendant has a visit, plaintiff cannot access the law library if a codefendant is present, and plaintiff is shackled when brought to court. *Id.* at 4. Finally, plaintiff submitted an email from the ADA confirming that plaintiff was subject to a keep-separate order prohibiting him from interacting with his three codefendants. *Id.* at 10-11. Plaintiff suggests that his disciplinary sanctions were a guise for imposing administrative segregation, but this is belied by the fact that three of his seven disciplinary hearings were held before his designation as an escape risk in April 2014. *See* DE 87-17; DE 98, ¶¶ 10-11. Finally, NCCC's location history indicates that plaintiff remained in the same cell at the time of his supposed placement into administrative segregation. *See* DE 96-2.

7

In sum, the record evidence indicates that plaintiff was (1) designated as an escape risk, placing additional restrictions on his movements; (2) placed on keeplock status seven times following disciplinary hearings; and (3) subject to a keep-separate order preventing plaintiff from interacting with his codefendants, which at times impeded his access to the law library and visitation. However, there is no evidence that plaintiff was ever placed in administrative segregation aside from his bare use of those two words. Although a single witness's sworn testimony can be enough to raise a genuine issue of fact precluding summary judgment, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Bradshaw v. City of New York*, 855 F. App'x 6, 9–10 (2d Cir. 2021) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Given the absence of any prison records evidencing plaintiff's administrative segregation, plaintiff's failure to provide an explanation for said lack of documentary evidence, and plaintiff's own submissions indicating that he was only subject to a keep-separate order and an escape risk designation, no reasonable jury – even after viewing the evidence in the light most favorable to plaintiff – could find that he was subject to 26 months of administrative segregation, *i.e.*, isolation for 22 hours a day. *See id.* at 10 (dismissing claim at summary judgment that defendant punched plaintiff on the left side of the face where medical records showed plaintiff sustained a bruise on the right side).

In dismissing plaintiff's due process claim in the First Amended Complaint, this Court already ruled that the conditions of plaintiff's confinement – including his separation from his fellow codefendants and restrictions on visitation, religious services, and law library access – were not "so extreme so as to amount to punishment." *See Hosannah v. Nassau Cty. Crim. Supreme Ct. Sergeant Officer(s)*, No. CV-161045(JFB)(AYS), 2017 WL 3207966, at *9 (E.D.N.Y. July 5,

2017), *report and recommendation adopted sub nom. Hosannah v. Sposato*, No. 16-CV-1045(JFB)(AYS), 2017 WL 3207750 (E.D.N.Y. July 26, 2017). Apart from the alleged 26 months of administrative segregation which this Court has already ruled no reasonable jury could believe, plaintiff's Second Amended Complaint and summary judgment papers allege no new material facts regarding the circumstances of his confinement. *Compare* DE 9, First Am. Compl. *with* DE 38, Second Am. Compl., DE 81, Pl. Opp., DE 102, Pl. Aff. As this Court explained, plaintiff's escape risk classification was imposed not with an express intent to punish but because of his possible flight risk, which served the government's "legitimate interests . . . [in] manag[ing] the facility in which the individual is detained[, and] . . . maintain[ing] security and order at the institution[.]" *Id.* at *9 (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)); *see also Adams v. Galletta*, No. 96-CV.-3750 (JGK), 1999 WL 959368, at *4 (S.D.N.Y. Oct. 19, 1999) (pretrial detainee's heightened monitoring designation and maximum security housing was not punitive where "records reflect that it was imposed because of the plaintiff's possible escape status and there is no evidence of any punitive intent"); *Drew v. City of New York*, No. 18-CV-10719 (LTS)(RWL), 2022 WL 19705, at *6-7 (S.D.N.Y. Jan. 3, 2022) (no due process violation where plaintiff failed to allege facts indicating that classification resulting in cell-status housing with twelve-hour lockdown was punitive in nature).

Absent some intent to punish, an administrative classification such as an escape risk designation cannot give rise to a due process claim. *See Valdez v. City of New York*, No. 11-CV.-05194 (PAC)(DF), 2013 WL 8642169, at *8 (S.D.N.Y. Sept. 3, 2013), *report and recommendation adopted*, No. 11-CV.-5194 (PAC)(DF), 2014 WL 2767201 (S.D.N.Y. June 17, 2014). As plaintiff does not have a cognizable liberty interest in remaining free of an administrative classification, he had no right to a hearing before being classified as an escape risk and did not have the right to an

9

appeal or review of said designation. *See id.* at \*10. Moreover, the statute governing administrative classification, N.Y. Comp. Codes R. & Regs. Tit. 9, § 7013.8, does not give inmates the right to a hearing, appeal, or any periodic review of their administrative classification. As there is no genuine dispute that plaintiff was never subject to administrative segregation, and this Court has already ruled that the conditions of his confinement did not amount to punishment, defendants are entitled to summary judgment on plaintiff's due process claim.[2]

  *2. Deliberate Indifference*

Relying again on plaintiff's assertion that he was placed in administrative segregation for 26 months, the Report and Recommendation recommends denial of defendants' summary judgment as to plaintiff's deliberate indifference claim. DE 93 at 21-22. As explained *supra*, there is no genuine dispute that plaintiff was never placed in administrative segregation. To satisfy the "objective prong" of a deliberate indifference claim, plaintiff must establish that "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). Although it is deplorable that plaintiff was unable to attend his wife's funeral and oftentimes could not attend religious service, it cannot be said these restrictions threatened his well-being or deprived plaintiff of his "basic human needs." *See Darnell*, 849 F.3d at 30 (quoting *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012)). As such, defendants are entitled to summary judgment on plaintiff's deliberate indifference claim because no reasonable jury could find that

---

[2] Although the Report and Recommendation analyzed plaintiff's Fourteenth Amendment claim as both a substantive and procedural due process claim, there can be neither a procedural nor substantive due process violation because the conditions of plaintiff's confinement do not constitute punishment. *See Drew*, 2022 WL 19705, at \*6 (explaining that a pretrial detainee has a liberty interest protected by procedural due process when conditions amount to punishment).

the conditions of his confinement were sufficiently serious as to constitute objective deprivations of the right to due process.

Because there are no underlying constitutional violations, plaintiff's *Monell* claims fail as well, and the Court need not address the question of qualified immunity.

*Conclusion*

For the reasons stated herein, defendants' motion for summary judgment is granted in its entirety.

A certificate of appealability shall not issue because plaintiff has not made a substantial showing that he was denied any constitutional rights. The Court certifies that any appeal of this Memorandum and Order as to those issues would not be taken in good faith, and thus *in forma pauperis* status is denied for the purposes of any appeal on those grounds. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to plaintiff and close the case.

**SO ORDERED.**

Dated: March 25, 2022
       Central Islip, New York

                                              /s/ Gary R. Brown
                                            HON. GARY R. BROWN
                                            UNITED STATES DISTRICT JUDGE